# UNITED STATES DISTRICT COURT

for the

Northern District of Georgia

Atlanta Division

FILED IN CLERK'S OFFICE U.S.D.C. - Atlanta
MAY 28 2026
KEVIN P. WEIMER, Clerk
By: Deputy Clerk

| | |
|---|---|
| Olivia Lebron<br><br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*<br>-v-<br><br>ITEC (Information Technology Engineering LLC),<br>Experis US, Inc.,<br>ManpowerGroup Public Sector, Inc.<br><br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. 1:26-cv-02654-MLB-RDC<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial: *(check one)* ☑ Yes ☐ No<br><br>Amended |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I. The Parties to This Complaint**

**A. The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Olivia Lebron |
| Street Address | 100 Hamilton Court |
| City and County | Marietta, Cobb County |
| State and Zip Code | Georgia 30068 |
| Telephone Number | (770)866-0633 |
| E-mail Address | olivia.lebron@gmail.com |

**B. The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | ITEC (Information Technology Engineering LLC) |
| Job or Title *(if known)* | |
| Street Address | 5995 Greenwood Plaza Blvd, Suite 225 |
| City and County | Greenwood Village, Arapahoe County |
| State and Zip Code | CO 80111 |
| Telephone Number | (303) 694-2616 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Experis US, Inc. |
| Job or Title *(if known)* | |
| Street Address | 100 Manpower Place |
| City and County | Milwaukee, Milwaukee County |
| State and Zip Code | WI 53212 |
| Telephone Number | (414) 231-1138 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | ManpowerGroup Public Sector, Inc. |
| Job or Title *(if known)* | |
| Street Address | 6400 Arlington Blvd, Floor 3 |
| City and County | Falls Church, Fairfax County |
| State and Zip Code | VA 22042 |
| Telephone Number | (703) 351-2400 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | ITEC (Information Technology Engineering LLC) (WFH - Remote) |
| Street Address | 1945 Powers Ferry Rd SE Unit 319 |
| City and County | Atlanta, Cobb County |
| State and Zip Code | GA 30339 |
| Telephone Number | (770) 866-0633 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:

Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.; 42 U.S.C. § 1981

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☑ Termination of my employment.
- ☐ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☑ Other acts *(specify)*: Selective enforcement, investigatory escalation, and interference

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

February 26, 2024 through May 27, 2025

C. I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☑ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☑ race Asian/Hispanic
- ☐ color
- ☐ gender/sex
- ☐ religion
- ☑ national origin Korean/Puerto Rican
- ☐ age *(year of birth)* ______ *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*

  ADA/FMLA-related medical conditions

E. The facts of my case are as follows. Attach additional pages if needed.

AMENDED COMPLAINT: See attached Statement of Facts. Plaintiff alleges discrimination, retaliation, unequal terms and conditions of employment, failure to accommodate, selective enforcement, investigatory escalation, and interference with protected ADA/FMLA leave and accommodation processes. Plaintiff further alleges that similarly situated white employees were treated more favorably under materially similar circumstances. Plaintiff attaches copies of the EEOC Charge of Discrimination and Notice of Right to Sue in support of this Amended Complaint.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

July 14, 2025

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* 02/11/2026 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Plaintiff seeks back pay, front pay, lost wages and benefits, compensatory damages, emotional distress damages, damages related to disruption of healthcare coverage and continuity of medical care, punitive damages as permitted by law, costs, and any additional relief deemed appropriate by the Court.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 05/28/2026

Signature of Plaintiff [signature]

Printed Name of Plaintiff Olivia Lebron

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Atlanta District Office**
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/11/2026

**To:** Olivia Lebron
1945 Powers Ferry Rd SE Apt. 319
ATLANTA, GA 30339
Charge No: 410-2025-04719

EEOC Representative and email: SHERESA SHERMAN
INVESTIGATOR
SHERESA.SHERMAN@EEOC.GOV

---

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 410-2025-04719.

On behalf of the Commission,

Digitally Signed By:Darrell E. Graham
02/11/2026

Darrell E. Graham
District Director

**Cc:**
NA NA
ITEC
1945 Powers Ferry Rd SE 319
ATLANTA, GA 30339

Michael M Sokolowski
Michael Best & Friedrich, LLP
841 West Grace Street Suite 3200
Chicago, IL 60606

Please retain this Notice for your records.

## INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 410-2025-04719 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30, Atlanta, GA 30303.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 410-2025-04719 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30, Atlanta, GA 30303.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

**are not considered** in determining if the impairment substantially limits a major life activity.

- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EEOC No. 410-2025-04719 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 410-2025-04719 |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Olivia Lebron

Phone No.: (770)770-866-0633

Year of Birth: 1980

Mailing Address: 1945 Powers Ferry Rd SE Apt. 319 ATLANTA, GA 30339, UNITED STATES OF AMERICA

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: ITEC (Information Technology Engineering LLC), subsidiary of ManpowerGroup US Inc.

No. Employees, Members: 200+ Employees

Phone No.: (303) 261-3382

Mailing Address: 5995 GREENWOOD PLAZA BLVD STE 225 ENGLEWOOD, CO 80111, UNITED STATES OF AMERICA

Name: ManpowerGroup US Inc.

No. Employees, Members:15,000+ Employees

Phone No.: (414) 961-1000 and (703) 245-9400

Mailing Address: 100 MANPOWER PLACE MILWAUKEE, WI 53212, UNITED STATES OF AMERICA

Name: Experis (Primary Employer and Administrative Controllers)

No. Employees, Members:15,000+ Employees

Phone No.: (703) 245-9400

Mailing Address: 6400 Arlington Blvd, Third Floor Falls Church, VA 22042, UNITED STATES OF AMERICA

DISCRIMINATION BASED ON:

Age, Disability, Race, National Origin, Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 02/26/2024

Latest: 05/27/2025

THE PARTICULARS ARE:

**I. Summary of Discriminatory, Retaliatory, and Unlawful Conduct**

I was employed by ITEC as a Remote - Technical Recruiter, a ManpowerGroup affiliate beginning February 26, 2024. During my employment I was unlawfully subjected to pervasive discrimination harassment retaliation and ultimately wrongful termination based on my protected characteristics including race (Asian and Hispanic), national origin, age (over 40) and disability. These adverse actions were not isolated or incidental but instead formed a sustained and escalating pattern of discriminatory and

retaliatory conduct. The harm was further compounded by the employer's unlawful response to my engagement in legally protected activities including the filing of internal HR and ethics complaints a formal request for reasonable accommodation under the Americans with Disabilities Act notice of intent to take protected FMLA leave and formal participation in a federal whistleblower protection program under the False Claims Act and Dodd Frank Act. Despite having prior knowledge of these protections, the employer failed to intervene and instead took increasingly adverse actions against me culminating in my unlawful termination.

Additionally, because the contract under which I was employed was administered by ManpowerGroup US Inc and its subsidiaries including ITEC under the administrative control of Experis and ManpowerGroup Public Sector Inc and was funded through federal subgrants these entities were subject to heightened legal obligations under federal civil rights and disability laws. Specifically, the contract was supported by federal financial assistance disbursed through Public Health Solutions under Assistance Listings 93914 HIV Emergency Relief Project Grants and 10557 WIC Special Supplemental Nutrition Program for Women Infants and Children.

As recipients subrecipients or subcontractors of federal funds ManpowerGroup US Inc ManpowerGroup Public Sector Inc Experis and ITEC were each bound to comply with Title VI and Title VII of the Civil Rights Act the Americans with Disabilities Act ADA and the nondiscrimination and accommodation mandates of Section 503 and Section 504 of the Rehabilitation Act. These statutes require proactive adherence to equal opportunity disability accommodation and anti-discrimination standards in federally funded employment settings. Despite these obligations the employer entities failed to prevent address or remedy the discrimination and retaliation to which I was subjected culminating in my unlawful termination in violation of federal law.

ITEC operates as a federal subcontractor and wholly owned subsidiary of ManpowerGroup US Inc. UEI Y8WMCMJC4DZ5. Although ITEC's current UEI is LXU5CN9UKLW3, its federal contractor status is confirmed, and it operates under prime, and subcontracts funded by the U.S. Department of Health and Human Services and the U.S. Department of Defense. All employment administration, including payroll, benefits, human resources, leave, and legal claims, was centrally controlled by ManpowerGroup US Inc. and ManpowerGroup Public Sector Inc. UEI WLJJKNWHXJD5, both under the ultimate parent entity ManpowerGroup Inc. UEI K572F32CSLG5. These ManpowerGroup entities also operate under and administer subgrants awarded to or through Public Health Solutions UEI GSAHEHG8MNL7 and Experis UEI YDDCWK535YJ9. As recipients, subrecipients, or subcontractors of federal financial assistance, each of these entities is bound by civil rights compliance obligations under Title VI and Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), and Sections 503 and 504 of the Rehabilitation Act. These federal statutes impose nondiscrimination, reasonable accommodation, and recordkeeping obligations enforceable under EEOC jurisdiction. Despite ITEC being my day-to-day employer, ManpowerGroup exercised centralized operational and administrative control and therefore bears legal responsibility as the controlling employer.

This charge is submitted as a dual filing under the EEOC's work sharing agreements with Fair Employment Practices Agencies (FEPAs) pursuant to 29 CFR Part 1601. I request coordinated processing with all state and local agencies having concurrent jurisdiction including the Georgia Commission on Equal Opportunity the Wisconsin Equal Rights Division the Colorado Civil Rights Division and the Virginia Division of Human Rights. I was hired as a remote employee based in Georgia while the employer maintained operational and administrative functions across Wisconsin Colorado and Virginia.

This filing invokes the full scope of protections and remedies available under federal law including Title VII of the Civil Rights Act the Americans with Disabilities Act the Age Discrimination in Employment Act the Equal Pay Act the Genetic Information Nondiscrimination Act and the Family and Medical Leave Act as well as any parallel or broader protections available under applicable state statutes.

**II. Violations of Civil Rights, Disability, Labor, and Whistleblower Statutes**

The conduct I experienced constitutes direct and repeated violations of multiple federal civil rights statutes and labor protections. Specifically, it violated Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq., which prohibits discrimination and retaliation based on race, color, sex, and national origin and protects employees who oppose or report such practices. It also violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., which prohibits discrimination against qualified individuals with disabilities, requires reasonable accommodation, and bars retaliation for requesting accommodations or opposing disability-based discrimination. Additionally, it violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., which protects individuals aged 40 and older from age-based employment discrimination and retaliation. I also assert violations of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, which guarantees all individuals the right to make and enforce contracts without racial discrimination and provides a parallel remedy to Title VII for racialized retaliation.

Further violations occurred under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., which prohibits interference with and retaliation for the use or attempted use of protected leave due to a serious health condition or to care for a qualified family member. The conduct also implicates Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, which

imposes proactive nondiscrimination and affirmative action obligations on federal contractors with respect to qualified individuals with disabilities.

As federal subrecipients and subcontractors, ITEC, ManpowerGroup US Inc., ManpowerGroup Public Sector Inc., and Experis are each recipients of federal assistance and are thus bound by the nondiscrimination mandates under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. These entities were awarded or administered federal subgrants and contracts under assistance programs such as those issued through the Department of Health and Human Services and the Department of Agriculture, including but not limited to HIV Emergency Relief and WIC Supplemental Nutrition Programs. As such, they fall within the jurisdiction of compliance enforcement by the U.S. Department of Health and Human Services Office for Civil Rights, the U.S. Department of Agriculture Office of Civil Rights, and other applicable federal oversight authorities.

The employer's conduct also violated federal whistleblower protection laws, including the False Claims Act, 31 U.S.C. §§ 3729 through 3733, which prohibits retaliation against employees who lawfully disclose or assist in investigations related to fraud, waste, or misuse of federal funds or programs. I also assert protection under the Dodd-Frank Wall Street Reform and

Consumer Protection Act, 15 U.S.C. § 78u-6, which protects whistleblowers who report potential securities law violations or regulatory misconduct from retaliation, including termination or adverse employment actions. Because ManpowerGroup is a publicly traded corporation, it is additionally subject to Sarbanes-Oxley Act provisions and Securities and Exchange Commission rules that bar retaliation against employees who raise concerns about internal control failures, material misstatements, or other violations.

Finally, the employer's conduct implicates due process principles through failure to recuse conflicted decision-makers and refusal to provide fair investigative procedures, as well as privacy protections through unauthorized disclosure and mishandling of confidential medical and personal information. This includes violations of ADA confidentiality requirements under 42 U.S.C. § 12112(d) and FMLA regulations under 29 C.F.R. § 825.500(g). My termination and the escalating adverse actions leading up to it, including obstruction of leave and accommodation processes, exclusion from work activities, retaliatory surveillance, and the use of pretextual justifications, were taken in direct response to my engagement in activities protected under each of the above statutes. These actions constitute not only individualized discrimination and retaliation but reflect systemic noncompliance with federal civil rights and labor obligations. The EEOC shares enforcement jurisdiction over Section 504 when federal employment and public access obligations intersect under Title I and Title II of the ADA

**III. Pattern of Disparate Treatment, Retaliation, and Hostile Work Environment**

From the outset of my employment with ITEC, a ManpowerGroup affiliate, on February 26, 2024, I was subjected to a pervasive pattern of discriminatory and retaliatory conduct based on my protected characteristics including race Asian and Hispanic color national origin age over 40 and disability. As the only multiracial minority on my team, I experienced continuous disparate treatment and a series of materially adverse actions including inequitable work assignments exclusion from essential resources and differential treatment in professional interactions with leadership. These adverse actions were not isolated or incidental but reflected a systemic disregard for equal opportunity and procedural fairness in violation of federal civil rights laws.

Despite comparable or superior qualifications, I was consistently assigned low priority and difficult to fill requisitions while similarly situated Caucasian recruiters including Karen Knight Rachel Padilla Lerin Merry and Irina Alexandru were given high value high visibility requisitions that materially enhanced their performance metrics and visibility within the organization. In addition, Jennifer Baribeau and Jason Berg, both Caucasian Business Development Managers, were directly responsible for requisition distribution submission of candidate resumes to hiring managers and clients and the flow of feedback. I discovered that some of my submitted candidates were not advanced or shared with clients at all despite proper documentation in our applicant tracking system. I raised these concerns and formally requested an audit of the vendor management system to validate candidate handling and requisition flow. However, leadership failed to take corrective action or even conduct a review.

I was also routinely excluded from key team communications denied access and withheld from collaborative platforms that were readily accessible to my white colleagues. These pervasive and adverse actions significantly obstructed my ability to meet performance expectations on an equal footing and contributed to an environment of exclusion disparate treatment and systemic denial of opportunity based on protected characteristics.

This pattern of exclusion and inequity was perpetuated and overseen by individuals in leadership roles including Michelle Strother Former Managing Director ITEC Deborah House Regional Vice President Experis Steve Kletzok Vice President of Operations Experis Erika Nobel McHallam Vice President and Program Manager ManpowerGroup Public Sector Kirsten Schmierer Director of Special Programs ManpowerGroup Public Sector Michelle Nettles Executive Vice President and Chief People and Legal Officer ManpowerGroup Kari Atkinson Senior Leader People and Culture Resource Center ManpowerGroup Mike McQuade Director People and Culture Resource Center ManpowerGroup and Samantha Strawsburg Manager for People

and Culture Resource Center ManpowerGroup. These individuals were each informed of my formal complaints and internal reports documenting inequitable requisition assignments exclusion based on race and gender obstruction of performance tools and retaliation following protected activities. Despite their direct knowledge and organizational responsibility to act they failed to take corrective measures or enforce ManpowerGroup's stated policies on nondiscrimination and antiretaliation.

Their inaction not only allowed the discriminatory conditions to persist but also signaled tacit approval of the environment I was forced to endure. Following my return from short term disability leave I was subjected to heightened scrutiny including monitoring of my personal LinkedIn activity by leadership which contributed to a climate of intimidation and surveillance. After I submitted a formal ADA accommodation request on April 18, 2025, and provided notice of FMLA leave on May 12, 2025, which was approved on May 21, 2025, these adverse conditions intensified and escalated toward termination.

The Respondents including ManpowerGroup Public Sector Inc UEI WLJJKNWHXJD5 Ultimate UEI K572F32CSLG5 ManpowerGroup US Inc UEI Y8WMCMJC4DZ5 and Experis UEI YDDCWK535YJ9 Ultimate UEI GSAHEHG8MNL7 were recipients of federal subgrants or administered federal funds in connection with my employment assignment. These awards were made under federal Assistance Listings including but not limited to 93914 HIV Emergency Relief Project Grants 93940 HIV Prevention Activities Health Department Based and 10557 WIC Special Supplemental Nutrition Program for Women Infants and Children. These constitute federal financial assistance as defined under 2 CFR Part 200 and accordingly trigger civil rights compliance obligations under Section 503 and Section 504 of the Rehabilitation Act Title VI and Title VII of the Civil Rights Act the Americans with Disabilities Act and related nondiscrimination statutes. As recipients subrecipients or contractors operating in federally funded programs these entities were required to implement and enforce nondiscriminatory employment practices provide reasonable accommodations and protect against retaliation. Their failure to do so represents a violation of federal law and subjects them to oversight by the EEOC, the US Department of Health and Human Services Office for Civil Rights, the US Department of Labor Office of Federal Contract Compliance Programs and other relevant federal enforcement agencies.

These entities were not passive payroll processors but had direct control over human resources benefits medical leave accommodations and workplace policy enforcement. As such they exercised joint employer functions and retained operational control under federal law. Despite being federally funded they failed to provide disability accommodations retaliated after protected disclosures and failed to post or comply with EEOC required notices and procedures.

The existence of these federal awards imposes legal obligations that the Respondents disregarded. The EEOC and where appropriate the HHS Office for Civil Rights OFCCP and DOJ Civil Rights Division have concurrent jurisdiction over these federally assisted employment arrangements.

Taken together the discriminatory assignments performance sabotage retaliatory exclusion and leadership's failure to intervene created a severe and pervasive hostile work environment. This conduct violated Title VII of the Civil Rights Act the Americans with Disabilities Act and the Age Discrimination in Employment Act and it materially altered the conditions of my employment.

**IV. Retaliation for Protected Activity and Interference with ADA and FMLA Rights**

Following my formal internal complaints (Case Numbers 91030 and 97802), I reported a sustained pattern of workplace harassment, discrimination, retaliation, and disparate treatment in violation of federal civil rights laws. These complaints documented adverse actions and exclusionary conduct based on my race (Asian and Hispanic), color, national origin, age (over 40), and disability, as well as retaliation for protected activities including requests for ADA accommodation, anticipated FMLA leave, and disclosures of potential compliance and ethical violations. I identified repeated instances of inequitable requisition assignment, surveillance of my external professional activity, obstruction of access to tools provided to similarly situated white colleagues, and exclusion from team communications. These reports placed the employer on formal notice of its legal obligations. Instead of corrective action, retaliation intensified and culminated in my unlawful termination.

On May 10, 2025, I submitted a formal FMLA request through Lincoln Financial Group. On May 12, 2025, I informed leadership and HR of my intent to take protected leave. That same day, I issued a cease-and-desist notice to Mike McQuade, Kari Atkinson, Samantha Strawsburg, and Julie Hoffman citing harassment, retaliation, and ADA/FMLA interference. Despite clear conflicts of interest, HR Advisor Arijeta Bajrami—reporting to one of the named parties, initiated an unspecified investigation against me and refused to recuse conflicted personnel, violating procedural fairness and neutrality.

On May 15, 2025, prior to FMLA leave taking effect, I was contacted by Kirsten Schmierer, a subject of prior complaints, regarding leave delegation. She had also interfered with the ADA process by imposing new, unnecessary medical certification demands for previously approved accommodation. Her interference was based on misrepresentations that Lincoln Financial could not transmit documentation, which I later confirmed to be false. These actions served to block both ADA and FMLA rights through deliberate obstruction.

Later that same day, I was abruptly placed on paid administrative leave without prior notice or explanation. I had contacted tech support for laptop issues, but my access was disabled shortly thereafter, followed by a call from Ms. Bajrami, who informed me I was under investigation for alleged security clearance misuse and conflict of interest—both false claims. I have never held a DoD clearance, and my dormant LLC had been disclosed prior to hiring. I immediately provided written documentation disproving the allegations.

On May 24, 2025, ManpowerGroup was formally notified of my active participation in the Department of Defense Office of Inspector General Whistleblower Reprisal Investigation and Alternative Dispute Resolution (WRI ADR) Program. This program provides statutory protection to DoD contractors and employees under 10 U.S.C. § 1034 and related federal whistleblower laws. Despite being officially named in the mediation process, the employer declined to participate and failed to respond to the ADR coordinator, thereby refusing to engage in good-faith resolution. This nonresponse constitutes a form of retaliation and procedural bad faith, particularly given the Respondents' status as federal contractors and publicly traded entities bound by SEC, DoD, and EEOC compliance obligations.

On May 27, 2025, I was terminated while on administrative leave and without the opportunity to invoke my approved FMLA leave. My time records were falsified, and none of the stated reasons for termination, whether gross misconduct, performance, or conflict of interest, were substantiated by evidence or supported by prior disciplinary action. Inconsistent justifications further demonstrate pretext.

The individual who influenced the termination decision, Steve Kletzok, was a named party in one of my active ethics complaints. Despite my formal recusal request, he remained involved, undermining the legitimacy of the process and reinforcing the retaliatory nature of the outcome.

Further evidencing disparate treatment, the company continues to employ Irina Alexandru, a white employee who operates a competing recruitment business in violation of company policy. In contrast, I was terminated over a non-operational, dormant LLC that had no overlap with my work duties and was disclosed in advance.

The employer's enforcement of conflict-of-interest policies in my case but not in that of Irina Alexandru exemplifies selective enforcement in furtherance of unlawful retaliation. Despite her ongoing operation of an external recruiting business that competes directly with ManpowerGroup's core services, Ms. Alexandru remains employed and has not been subject to investigation, discipline, or adverse action. In contrast, I was terminated over a dormant limited liability company that had been fully disclosed prior to hire and had no operational or contractual overlap with my job duties, per Steve Kletzok.

This disparity illustrates a clear inconsistency in how alleged conflicts of interest are addressed and undermines the legitimacy of the employer's stated justification. Under federal anti-retaliation precedent, including decisions interpreting Title VII and the Americans with Disabilities Act, selective or inconsistent enforcement of workplace rules, particularly when exercised in close proximity to protected activity, constitutes strong evidence of pretext and retaliatory motive. The unequal treatment in this context cannot be justified by neutral business rationale and supports a finding that the stated reasons for termination were neither credible nor lawful.

These actions represent not only violations of Title VII, the ADA, the ADEA, and the FMLA, but also constitute unlawful retaliation under the False Claims Act (31 U.S.C. § 3730(h)), the Dodd-Frank Act (15 U.S.C. § 78u-6(h)), and DoD whistleblower protection statutes. The refusal to engage in the DoD OIG ADR process further underscores a pattern of noncompliance and bad-faith retaliation by a publicly traded federal contractor obligated to maintain anti-retaliation protocols and affirmative civil rights compliance.

The employer's use of conflicting and unsupported termination justifications including "gross misconduct," "performance," and "conflict of interest" reflects a pattern of shifting explanations that lack evidentiary support and procedural consistency. These inconsistencies are not merely administrative errors but constitute compelling evidence of pretext under established legal standards. In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the United States Supreme Court held that once an employee establishes a prima facie case of discrimination or retaliation, an employer's failure to provide a consistent legitimate and substantiated non-discriminatory reason for adverse action supports an inference of unlawful motive. Here, the absence of documentation disciplinary history or contemporaneous records to support the employer's stated reasons combined with their deviation from internal policies further corroborates retaliatory intent and unlawful motive. This reinforces that my termination was not the result of performance or misconduct but rather a direct consequence of engaging in legally protected activity.

**V. Adverse Actions, Retaliatory Pretext, and Procedural Violations**

In addition to my unlawful termination, I was subjected to a continuous and escalating pattern of materially adverse employment actions that altered the terms, conditions, and privileges of my employment. These actions were not incidental but reflected a coordinated and sustained course of retaliation, exclusion, procedural misconduct, and disparate treatment following my engagement in legally protected activities.

Among the adverse actions taken against me were the falsification of time records during the period in which my FMLA request was pending and subsequently approved. My timesheet was altered without my knowledge or consent. Protected leave time was omitted or misrepresented, constituting direct interference in violation of the Family and Medical Leave Act, codified at 29 USC Section 2615.

I was also systematically denied access to high-value requisitions and strategic assignments, despite consistently meeting performance expectations and actively pursuing professional development. My 2024 mid-year and year-end performance reviews confirmed that I demonstrated competency and growth. In contrast, similarly, situated Caucasian colleagues including Rachel Padilla, Lerin Merry, and Karen Knight were assigned more favorable requisitions that enhanced their performance metrics and organizational visibility.

The employer's enforcement of conflict-of-interest policies in my case but not in that of Irina Alexandru exemplifies selective enforcement in furtherance of unlawful retaliation. Despite her ongoing operation of an external recruiting business that competes directly with ManpowerGroup's core services, Ms. Alexandru remains employed and has not been subject to investigation, discipline, or adverse action. In contrast, I was terminated over a dormant limited liability company that had been fully disclosed prior to hire and had no operational or contractual overlap with my job duties, per Steve Kletzok.

This disparity illustrates a clear inconsistency in how alleged conflicts of interest are addressed and undermines the legitimacy of the employer's stated justification. Under federal anti-retaliation precedent, including decisions interpreting Title VII and the Americans with Disabilities Act, selective or inconsistent enforcement of workplace rules, particularly when exercised in close proximity to protected activity, constitutes strong evidence of pretext and retaliatory motive. The unequal treatment in this context cannot be justified by neutral business rationale and supports a finding that the stated reasons for termination were neither credible nor lawful.

Following my protected disclosures, I was excluded from team communications, leadership meetings, and developmental opportunities. These exclusions occurred despite my high level of engagement and completion of dozens of internal training courses and certifications. Leadership failed to justify or remediate these retaliatory acts.

In addition, individuals named in my prior ethics complaints including Steve Kletzok, Erika Nobel McHallam, and Kirsten Schmierer were permitted to influence employment and disciplinary decisions involving me. My formal requests for their recusal were ignored, violating fundamental principles of procedural fairness and reinforcing the retaliatory intent behind adverse actions taken.

The Georgia Department of Labor issued an Unemployment Insurance eligibility determination on June 25, 2025, finding no misconduct on my part and explicitly stating that the employer's justifications for termination were shifting, undocumented, and unsubstantiated. This objective finding by a government agency directly undermines the employer's asserted rationale and supports a conclusion of unlawful retaliation and pretext.

Additional corroboration is found in the employer's refusal to participate in the Alternative Dispute Resolution process initiated by the Department of Defense Office of Inspector General following my protected whistleblower submission. The employer failed to respond to official correspondence from the DoD OIG Whistleblower Reprisal Investigation and Alternative Dispute Resolution Program, thereby forfeiting an opportunity to resolve the dispute through early intervention. This refusal triggered a formal referral for federal investigation and confirms that my termination met the statutory threshold for whistleblower reprisal under both the False Claims Act and the Dodd Frank Act.

Taken together, the actions both before and after my termination demonstrate a clear and sustained pattern of unlawful retaliation, discriminatory treatment, and systemic violations of procedural and statutory protections. These actions violated Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Age Discrimination in Employment Act, and whistleblower protection statutes. The employer's conduct reflects an institutional failure to uphold civil rights and labor compliance obligations and constitutes bad faith in both execution and response to federal oversight.

In addition to the claims asserted herein, I currently have pending matters before other federal enforcement agencies arising from the same or related facts. These include: (1) a Whistleblower Reprisal Investigation pending with the U.S. Department of Defense Office of Inspector General (DoD OIG) under 10 U.S.C. § 1034; (2) a formal complaint before the U.S. Department of Labor Wage and Hour Division (DOL WHD) regarding violations of the Family and Medical Leave Act (FMLA); and (3) an affirmative action and discrimination complaint submitted to the U.S. Department of Labor Office of Federal Contract Compliance Programs (OFCCP) under Section 503 of the Rehabilitation Act of 1973. These concurrent matters involve materially overlapping factual allegations, including disability-based discrimination, leave interference, whistleblower retaliation, and noncompliance by federal contractors with applicable civil rights and labor obligations. I respectfully request that the EEOC coordinate its review with these agencies as appropriate, in accordance with established interagency protocols and jurisdiction-sharing procedures.

**VI. Requested Remedies and Relief under Federal Civil Rights Laws**

Based on the totality of facts, corroborating evidence, third party findings, and the employer's unlawful conduct described throughout this charge, I respectfully request that the U.S. Equal Employment Opportunity Commission conduct a comprehensive investigation and secure full remedies under applicable federal law. The pattern of discrimination, retaliation, procedural violations, and wrongful termination caused substantial and irreversible harm to my employment record, professional reputation, personal health, and family stability. These harms require not only acknowledgment but complete and enforceable redress in accordance with the whole relief principle outlined in EEOC Compliance Manual Section 12.

I do not seek reinstatement. Returning to a work environment marked by repeated retaliation, exclusion, and obstruction of rights would be incompatible with the dignity and legal protections afforded by Title VII and related statutes. Instead, I seek whole relief as permitted by federal law and agency authority to place me, as nearly as possible, in the position I would have occupied absent unlawful conduct.

I request back pay to restore lost wages, commissions, bonuses, accrued leave, retirement contributions, and health benefits from the date of unlawful termination through the end of the recovery period.

I request front pay in lieu of reinstatement based on foreseeable future income loss, reputational damage, constructive displacement, and loss of comparable career opportunities.

I seek compensatory damages for medically documented emotional distress including severe anxiety, major depressive symptoms, sleep disruption, and other stress related conditions caused by the employer's conduct.

I seek compensation for reputational harm and damage to my long-term career trajectory including the inability to secure accurate references or equal consideration in future employment due to retaliatory termination.

I seek compensatory relief for derivative hardship to my dependent daughter who lives with Type 1 diabetes and whose access to ongoing care, treatment continuity, and insurance coverage was severely compromised by my termination.

I request reimbursement for all medical and therapeutic costs incurred because of the employer's actions including care provided to my dependent for conditions exacerbated by the loss of income and benefits.

I request restoration or reimbursement of employer sponsored health insurance premiums and COBRA expenses incurred following termination particularly for critical care continuity and prescriptions related to diabetes.

I request punitive damages under Title VII the Americans with Disabilities Act and Section 1981 of the Civil Rights Act of 1866 due to the employer's willful and malicious disregard for my federally protected rights and deliberate retaliation following protected activity.

I request liquidated damages under the Family and Medical Leave Act and the Age Discrimination in Employment Act for knowing and bad faith violations of federal leave protections and age-based protections.

I request attorneys' fees expert witness costs and all litigation related expenses reasonably incurred in asserting and defending my civil rights throughout these proceedings.

I further request equitable and institutional relief. This includes removal of false or retaliatory entries from my personnel file, official correction of the reason for separation, reinstatement of accurate rehire eligibility status, and provision of a corrected and neutral employment reference affirming that I was not terminated for cause.

The employer should be required to adopt nonretaliation protocols, neutral internal complaint procedures, and conflict free decision making in future investigations and ADA or FMLA processes. Targeted training must be implemented for HR and leadership personnel to ensure compliance with civil rights obligations, retaliation prevention standards, and whistleblower protections.

I request mandatory posting of EEOC and federal rights notices in physical and virtual workspaces and public disclosure of EEOC findings, corrective actions, or consent decrees as appropriate. In cases involving federal grants or contracts, ongoing compliance monitoring should be imposed.

I further request a referral to appropriate enforcement bodies. These include the U.S. Department of Labor for FMLA violations, the U.S. Department of Justice and the Department of Health and Human Services Office for Civil Rights for potential Rehabilitation Act and Title VI violations, the Office of Federal Contract Compliance Programs for noncompliance with Section 503 affirmative action obligations, and the Department of Defense Office of Inspector General and related federal entities for whistleblower reprisal.

Finally, I reserve the right to pursue claims of fraudulent inducement and material misrepresentation under applicable state and

federal law. These arise from the employer's knowingly false representations about the nature of the position, compensation structure, and workplace safeguards for ADA and FMLA accommodations. Specifically, I was induced to accept and remain in the position under misrepresented terms including falsified commission structures, concealed reliance on vendor management systems that restricted earnings, and deceptive claims regarding internal complaint procedures and retaliation protections.

These representations were made in bad faith and materially contributed to the damages I have suffered including career disruption, loss of healthcare for my dependent, and psychological harm. The employer's subsequent procedural misconduct and refusal to engage in alternative dispute resolution despite being notified of my protected status as a whistleblower participating in the Department of Defense Office of Inspector General's Whistleblower Reprisal Program further demonstrates bad faith, continued retaliation, and organizational indifference to federal accountability.

The EEOC and relevant federal authorities are respectfully requested to act in accordance with applicable law and policy to ensure full legal, equitable, and institutional remedy.

**VII. Statutory Clarifications and Expansion of Charge Basis**

Pursuant to 29 CFR section 1601.12(b) and applicable EEOC procedures I respectfully submit this supplement to clarify and expand the statutory bases and requested remedies in connection with the facts already set forth in this charge. These additions are submitted to ensure comprehensive coverage of all relevant federal statutes enforceable by the EEOC and to preserve claims arising from related misconduct.

Genetic Information Nondiscrimination Act of 2008 (GINA) Title II: During the hiring process I disclosed that my dependent daughter has Type 1 diabetes in a genetic condition. Continued access to employer sponsored health benefits and FMLA related protection was a material factor in my decision to accept employment. I received express assurances that my family's medical needs would be supported through accommodation protected leave and stable compensation. However, following disclosures related to my daughter's medical condition and my engagement in protected caregiving activities the employer obstructed my FMLA access retaliated against my use of leave and ultimately terminated me while I was engaged in protected caregiving responsibilities. These actions constitute violations of GINA's Title II provisions which prohibit the use of genetic information including family medical history in employment decisions leave interference or adverse action.

Equal Pay Act of 1963 (EPA): Upon hire, I was placed in a role structurally equivalent to that of similarly situated Caucasian female recruiters. Despite comparable qualifications and job title, I was consistently assigned materially lower-value requisitions and denied equitable access to revenue-generating opportunities that were routinely allocated to my peers. These discriminatory assignment patterns directly suppressed my commission-based earnings, which comprised a significant portion of the compensation structure. The employer's rationale for this disparity was never grounded in performance, as no documented performance issues were cited during my employment, and this claim was further discredited by the Georgia Department of Labor's approval of my unemployment benefits. The employer did not contest that finding. These facts support a clear violation of the Equal Pay Act, which prohibits pay disparities on the basis of sex where the work performed is substantially equal in skill, effort, and responsibility and is carried out under similar working conditions.

Lilly Ledbetter Fair Pay Act of 2009: Although my base salary remained unchanged, I was systematically denied equitable access to commission generating requisitions which materially suppressed my total earning potential. These discriminatory assignment practices occurred repeatedly and had a cumulative financial impact over time. Each paycheck reflected the effects of these continuing discriminatory decisions. Under the Lilly Ledbetter Fair Pay Act of 2009 each compensation event affected by a prior discriminatory action whether by omission or commission constitutes a new violation and resets the statute of limitations for pay-related claims under Title VII the ADA and the ADEA.

Reservation of Right to Amend or Supplement: I formally reserve the right to amend, expand or supplement this charge as new information becomes available during the EEOC's investigation or related proceedings. This includes but is not limited to claims under the Pregnant Workers Fairness Act. Additional whistleblower statutes fraudulent inducement and procedural or privacy violations under federal or state law. This reservation ensures preservation of all rights necessary for full legal and equitable redress.

Expanded Remedies Sought: In addition to the relief requested in Sections VI and prior portions of this charge I respectfully seek the following specific remedies for the statutory violations described herein. I request declaratory relief establishing that the employer's actions violated the Genetic Information Nondiscrimination Act, the Equal Pay Act and the Lilly Ledbetter Fair Pay Act. I request equitable relief in the form of mandated audits to assess requisition distribution pay equity and compliance with confidentiality requirements related to genetic information and dependent medical disclosures. I request institutional reforms including updated policies compliance training and structured oversight to ensure future adherence to GINA and EPA standards within similarly structured employment programs.

These supplemental allegations and requests are submitted in good faith and under penalty of perjury as part of EEOC Charge No. 410 2025 04719. I respectfully request that the EEOC incorporate these statutory bases and remedial measures into the formal scope of its investigation and any resulting enforcement actions.

**VIII. Procedural Rights, Federal Agency Accountability, and Reserved Claims**

In addition to the substantive civil rights violations committed by my employer, I assert and preserve all applicable procedural rights under federal law related to the conduct of federal agencies involved in the processing, investigation, or adjudication of this charge. This includes the Equal Employment Opportunity Commission (EEOC), the U.S. Department of Labor (DOL), and the U.S. Department of Defense Office of Inspector General (DoD OIG). These procedural rights are independently guaranteed under federal administrative and constitutional law and are asserted as follows.

I invoke the protections of the Administrative Procedure Act of 1946 codified at 5 U.S.C. §§ 551 through 559 which entitles me to due process in all federal administrative proceedings. These rights include but are not limited to timely and adequate notice, the right to impartial adjudication, and protection from arbitrary capricious or prejudicial agency conduct. I reserve the right to contest any administrative action that deviates from procedural norms or results in delay, conflict of interest, or bias affecting the fair resolution of this charge.

Pursuant to the Freedom of Information Act codified at 5 U.S.C. § 552 I intend to submit formal FOIA requests for all agency records and communications concerning the processing, internal deliberation, and disposition of this charge. This includes documentation of EEOC staff actions correspondence between agencies and application of internal procedures or exceptions. FOIA provides a statutory mechanism to ensure transparency in administrative oversight and protects my right to obtain non-exempt records for legal review.

Under the Privacy Act of 1974 codified at 5 U.S.C. § 552a I assert my right to control access to and dissemination of personal and medical information obtained or maintained by the EEOC and affiliated federal contractors. This is especially applicable to ADA-related health documentation FMLA leave records and any personnel files that may have been shared without appropriate authorization or redaction. Any unlawful disclosure or failure to safeguard this data will be addressed through appropriate legal remedies including Privacy Act enforcement provisions.

To the extent that any federal agency imposes duplicative excessive or unjustified documentation requirements in connection with the handling of this charge I assert protections under the Paperwork Reduction Act of 1995. The PRA prohibits agencies from imposing unreasonable burdens on private citizens without proper clearance and procedural justification and I reserve all rights to challenge PRA violations in the administrative record.

The employer's refusal to engage in the mediation process initiated by the Department of Defense Office of Inspector General following receipt of my whistleblower disclosures represents a violation of the principles set forth in the Administrative Dispute Resolution Act codified at 5 U.S.C. § 571. Their failure to participate in this federally authorized resolution process constitutes both bad faith and obstruction and contributes to an actionable record of retaliation by a federal contractor and publicly traded entity.

Additionally, I have filed a formal complaint with the EEOC Office of Inspector General regarding potential misconduct ethical violations and procedural irregularities committed by federal employees during the intake and investigatory phases of this charge. These issues include failures to enforce mandatory recusals disregard of established procedures and failure to maintain investigatory neutrality. These acts are governed by the Federal Employee Conduct Standards codified at 5 U.S.C. § 7301 which mandates that federal officials exercise impartiality integrity and fidelity to law in all official duties.

These procedural assertions are not merely ancillary but form an essential component of my claim for full and fair adjudication. They ensure that the investigation and resolution of my charge conform to constitutional principles due process guarantees and federal agency obligations. I formally reserve the right to pursue judicial or administrative review should any agency involved in this matter deviate from its statutory or regulatory obligations.

This document is submitted as part of EEOC Charge No. 410-2025-04719 and should be incorporated in full into the investigatory and adjudicative record.

**IX. Procedural Clarification: Intake Irregularities and Good Faith Correction**

This statement is submitted in connection with EEOC Charge No. 410 2025 04719 to ensure that the investigatory record accurately reflects the procedural course and legal scope of the matter. In good faith and pursuant to my rights under 29 CFR § 1601.12(b), I offer the following clarification:

Following submission of my formal intake materials, I experienced significant irregularities in the handling and transmission of the initial Charge of Discrimination. Despite the timely submission of supporting documentation and statutory claims, the version I received shortly thereafter was materially incomplete and did not reflect key allegations already documented. Entire categories of protected activity and statutory bases including whistleblower protections, procedural violations, and retaliation under federal contract compliance standards were excluded or misstated.

These omissions, if uncorrected, could improperly constrain the scope of investigation and limit the EEOC's ability to evaluate violations under applicable law. To prevent such prejudice and in accordance with established Commission procedures, I have prepared and submitted this supplemented charge to ensure the agency has a full and accurate record for review.

This supplementation is made in good faith, not adversarial, and with the intention of restoring procedural clarity, reinforcing investigatory integrity, and ensuring alignment with governing statutes and EEOC jurisdiction. I respectfully request that this complete submission be incorporated into the investigatory and adjudicative record in its entirety.

I affirm my continued willingness to cooperate with the Commission and related agencies and respectfully request that no adverse inference be drawn from the need to correct prior omissions made at the intake or processing stage.

I respectfully request that these charges proceed through the full administrative process, including investigation, voluntary mediation, and conciliation, as provided under EEOC procedures and 29 C.F.R. Part 1601. I do not seek an early dismissal or Notice of Right to Sue at this stage. My intent is to exhaust all administrative remedies in good faith and in accordance with federal law. Premature closure would not only contradict this stated intent but may also frustrate investigatory obligations under Title VII, the ADA, and other cited statutes, particularly in light of confirmed employer non-responsiveness to related federal ADR and whistleblower investigations. I reserve all rights under law and respectfully request that the EEOC confirm progression to the investigative phase.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary________________________________________

Printed Name __________________________________________

## CP Enclosure with EEOC Form 5 (06/24)

### Privacy Act Statement

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **Form Number/Title/Date.** EEOC Form 5, Charge of Discrimination (09/24).
2. **Authority.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.
3. **Principal Purposes.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.
4. **Routine Uses.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.

A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **Whether Disclosure is Mandatory; Effect of Not Giving Information.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## Notice of Right to Request Substantial Weight Review

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## Notice of Non-Retaliation Requirements

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 410-2025-11644 |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Olivia Lebron

Phone No.: (770)770-866-0633

Year of Birth: 1980

Mailing Address: 1945 Powers Ferry Rd SE Apt. 319 ATLANTA, GA 30339, UNITED STATES OF AMERICA

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: ITEC (Information Technology Engineering LLC), subsidiary of ManpowerGroup US Inc.

No. Employees, Members: 200+ Employees

Phone No.: (303) 261-3382

Mailing Address: 5995 GREENWOOD PLAZA BLVD STE 225
ENGLEWOOD, CO 80111, UNITED STATES OF AMERICA

Name: ManpowerGroup US Inc.

No. Employees, Members:15,000+ Employees

Phone No.: (414) 961-1000 and (703) 245-9400

Mailing Address: 100 MANPOWER PLACE
MILWAUKEE, WI 53212, UNITED STATES OF AMERICA

Name: Experis (Primary Employer and Administrative Controllers)

No. Employees, Members:15,000+ Employees

Phone No.: (703) 245-9400

Mailing Address: 6400 Arlington Blvd, Third Floor
Falls Church, VA 22042, UNITED STATES OF AMERICA

DISCRIMINATION BASED ON:

Age, Disability, Race, National Origin, Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 02/26/2024

Latest: 05/27/2025

THE PARTICULARS ARE:

**I. Summary of Discriminatory, Retaliatory, and Unlawful Conduct**

I was employed by ITEC as a Remote - Technical Recruiter, a ManpowerGroup affiliate beginning February 26, 2024. During my employment I was unlawfully subjected to pervasive discrimination harassment retaliation and ultimately wrongful termination based on my protected characteristics including race (Asian and Hispanic), national origin, age (over 40) and disability. These adverse actions were not isolated or incidental but instead formed a sustained and escalating pattern of discriminatory and

retaliatory conduct. The harm was further compounded by the employer's unlawful response to my engagement in legally protected activities including the filing of internal HR and ethics complaints a formal request for reasonable accommodation under the Americans with Disabilities Act notice of intent to take protected FMLA leave and formal participation in a federal whistleblower protection program under the False Claims Act and Dodd Frank Act. Despite having prior knowledge of these protections, the employer failed to intervene and instead took increasingly adverse actions against me culminating in my unlawful termination.

Additionally, because the contract under which I was employed was administered by ManpowerGroup US Inc and its subsidiaries including ITEC under the administrative control of Experis and ManpowerGroup Public Sector Inc and was funded through federal subgrants these entities were subject to heightened legal obligations under federal civil rights and disability laws. Specifically, the contract was supported by federal financial assistance disbursed through Public Health Solutions under Assistance Listings 93914 HIV Emergency Relief Project Grants and 10557 WIC Special Supplemental Nutrition Program for Women Infants and Children.

As recipients subrecipients or subcontractors of federal funds ManpowerGroup US Inc ManpowerGroup Public Sector Inc Experis and ITEC were each bound to comply with Title VI and Title VII of the Civil Rights Act the Americans with Disabilities Act ADA and the nondiscrimination and accommodation mandates of Section 503 and Section 504 of the Rehabilitation Act. These statutes require proactive adherence to equal opportunity disability accommodation and anti-discrimination standards in federally funded employment settings. Despite these obligations the employer entities failed to prevent address or remedy the discrimination and retaliation to which I was subjected culminating in my unlawful termination in violation of federal law.

ITEC operates as a federal subcontractor and wholly owned subsidiary of ManpowerGroup US Inc. UEI Y8WMCMJC4DZ5. Although ITEC's current UEI is LXU5CN9UKLW3, its federal contractor status is confirmed, and it operates under prime, and subcontracts funded by the U.S. Department of Health and Human Services and the U.S. Department of Defense. All employment administration, including payroll, benefits, human resources, leave, and legal claims, was centrally controlled by ManpowerGroup US Inc. and ManpowerGroup Public Sector Inc. UEI WLJJKNWHXJD5, both under the ultimate parent entity ManpowerGroup Inc. UEI K572F32CSLG5. These ManpowerGroup entities also operate under and administer subgrants awarded to or through Public Health Solutions UEI GSAHEHG8MNL7 and Experis UEI YDDCWK535YJ9. As recipients, subrecipients, or subcontractors of federal financial assistance, each of these entities is bound by civil rights compliance obligations under Title VI and Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), and Sections 503 and 504 of the Rehabilitation Act. These federal statutes impose nondiscrimination, reasonable accommodation, and recordkeeping obligations enforceable under EEOC jurisdiction. Despite ITEC being my day-to-day employer, ManpowerGroup exercised centralized operational and administrative control and therefore bears legal responsibility as the controlling employer.

This charge is submitted as a dual filing under the EEOC's work sharing agreements with Fair Employment Practices Agencies (FEPAs) pursuant to 29 CFR Part 1601. I request coordinated processing with all state and local agencies having concurrent jurisdiction including the Georgia Commission on Equal Opportunity the Wisconsin Equal Rights Division the Colorado Civil Rights Division and the Virginia Division of Human Rights. I was hired as a remote employee based in Georgia while the employer maintained operational and administrative functions across Wisconsin Colorado and Virginia.

This filing invokes the full scope of protections and remedies available under federal law including Title VII of the Civil Rights Act the Americans with Disabilities Act the Age Discrimination in Employment Act the Equal Pay Act the Genetic Information Nondiscrimination Act and the Family and Medical Leave Act as well as any parallel or broader protections available under applicable state statutes.

**II. Violations of Civil Rights, Disability, Labor, and Whistleblower Statutes**

The conduct I experienced constitutes direct and repeated violations of multiple federal civil rights statutes and labor protections. Specifically, it violated Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq., which prohibits discrimination and retaliation based on race, color, sex, and national origin and protects employees who oppose or report such practices. It also violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., which prohibits discrimination against qualified individuals with disabilities, requires reasonable accommodation, and bars retaliation for requesting accommodations or opposing disability-based discrimination. Additionally, it violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., which protects individuals aged 40 and older from age-based employment discrimination and retaliation. I also assert violations of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, which guarantees all individuals the right to make and enforce contracts without racial discrimination and provides a parallel remedy to Title VII for racialized retaliation.

Further violations occurred under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., which prohibits interference with and retaliation for the use or attempted use of protected leave due to a serious health condition or to care for a qualified family member. The conduct also implicates Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, which

imposes proactive nondiscrimination and affirmative action obligations on federal contractors with respect to qualified individuals with disabilities.

As federal subrecipients and subcontractors, ITEC, ManpowerGroup US Inc., ManpowerGroup Public Sector Inc., and Experis are each recipients of federal assistance and are thus bound by the nondiscrimination mandates under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. These entities were awarded or administered federal subgrants and contracts under assistance programs such as those issued through the Department of Health and Human Services and the Department of Agriculture, including but not limited to HIV Emergency Relief and WIC Supplemental Nutrition Programs. As such, they fall within the jurisdiction of compliance enforcement by the U.S. Department of Health and Human Services Office for Civil Rights, the U.S. Department of Agriculture Office of Civil Rights, and other applicable federal oversight authorities.

The employer's conduct also violated federal whistleblower protection laws, including the False Claims Act, 31 U.S.C. §§ 3729 through 3733, which prohibits retaliation against employees who lawfully disclose or assist in investigations related to fraud, waste, or misuse of federal funds or programs. I also assert protection under the Dodd-Frank Wall Street Reform and

Consumer Protection Act, 15 U.S.C. § 78u-6, which protects whistleblowers who report potential securities law violations or regulatory misconduct from retaliation, including termination or adverse employment actions. Because ManpowerGroup is a publicly traded corporation, it is additionally subject to Sarbanes-Oxley Act provisions and Securities and Exchange Commission rules that bar retaliation against employees who raise concerns about internal control failures, material misstatements, or other violations.

Finally, the employer's conduct implicates due process principles through failure to recuse conflicted decision-makers and refusal to provide fair investigative procedures, as well as privacy protections through unauthorized disclosure and mishandling of confidential medical and personal information. This includes violations of ADA confidentiality requirements under 42 U.S.C. § 12112(d) and FMLA regulations under 29 C.F.R. § 825.500(g). My termination and the escalating adverse actions leading up to it, including obstruction of leave and accommodation processes, exclusion from work activities, retaliatory surveillance, and the use of pretextual justifications, were taken in direct response to my engagement in activities protected under each of the above statutes. These actions constitute not only individualized discrimination and retaliation but reflect systemic noncompliance with federal civil rights and labor obligations. The EEOC shares enforcement jurisdiction over Section 504 when federal employment and public access obligations intersect under Title I and Title II of the ADA

**III. Pattern of Disparate Treatment, Retaliation, and Hostile Work Environment**

From the outset of my employment with ITEC, a ManpowerGroup affiliate, on February 26, 2024, I was subjected to a pervasive pattern of discriminatory and retaliatory conduct based on my protected characteristics including race Asian and Hispanic color national origin age over 40 and disability. As the only multiracial minority on my team, I experienced continuous disparate treatment and a series of materially adverse actions including inequitable work assignments exclusion from essential resources and differential treatment in professional interactions with leadership. These adverse actions were not isolated or incidental but reflected a systemic disregard for equal opportunity and procedural fairness in violation of federal civil rights laws.

Despite comparable or superior qualifications, I was consistently assigned low priority and difficult to fill requisitions while similarly situated Caucasian recruiters including Karen Knight Rachel Padilla Lerin Merry and Irina Alexandru were given high value high visibility requisitions that materially enhanced their performance metrics and visibility within the organization. In addition, Jennifer Baribeau and Jason Berg, both Caucasian Business Development Managers, were directly responsible for requisition distribution submission of candidate resumes to hiring managers and clients and the flow of feedback. I discovered that some of my submitted candidates were not advanced or shared with clients at all despite proper documentation in our applicant tracking system. I raised these concerns and formally requested an audit of the vendor management system to validate candidate handling and requisition flow. However, leadership failed to take corrective action or even conduct a review.

I was also routinely excluded from key team communications denied access and withheld from collaborative platforms that were readily accessible to my white colleagues. These pervasive and adverse actions significantly obstructed my ability to meet performance expectations on an equal footing and contributed to an environment of exclusion disparate treatment and systemic denial of opportunity based on protected characteristics.

This pattern of exclusion and inequity was perpetuated and overseen by individuals in leadership roles including Michelle Strother Former Managing Director ITEC Deborah House Regional Vice President Experis Steve Kletzok Vice President of Operations Experis Erika Nobel McHallam Vice President and Program Manager ManpowerGroup Public Sector Kirsten Schmierer Director of Special Programs ManpowerGroup Public Sector Michelle Nettles Executive Vice President and Chief People and Legal Officer ManpowerGroup Kari Atkinson Senior Leader People and Culture Resource Center ManpowerGroup Mike McQuade Director People and Culture Resource Center ManpowerGroup and Samantha Strawsburg Manager for People

and Culture Resource Center ManpowerGroup. These individuals were each informed of my formal complaints and internal reports documenting inequitable requisition assignments exclusion based on race and gender obstruction of performance tools and retaliation following protected activities. Despite their direct knowledge and organizational responsibility to act they failed to take corrective measures or enforce ManpowerGroup's stated policies on nondiscrimination and antiretaliation.

Their inaction not only allowed the discriminatory conditions to persist but also signaled tacit approval of the environment I was forced to endure. Following my return from short term disability leave I was subjected to heightened scrutiny including monitoring of my personal LinkedIn activity by leadership which contributed to a climate of intimidation and surveillance. After I submitted a formal ADA accommodation request on April 18, 2025, and provided notice of FMLA leave on May 12, 2025, which was approved on May 21, 2025, these adverse conditions intensified and escalated toward termination.

The Respondents including ManpowerGroup Public Sector Inc UEI WLJJKNWHXJD5 Ultimate UEI K572F32CSLG5 ManpowerGroup US Inc UEI Y8WMCMJC4DZ5 and Experis UEI YDDCWK535YJ9 Ultimate UEI GSAHEHG8MNL7 were recipients of federal subgrants or administered federal funds in connection with my employment assignment. These awards were made under federal Assistance Listings including but not limited to 93914 HIV Emergency Relief Project Grants 93940 HIV Prevention Activities Health Department Based and 10557 WIC Special Supplemental Nutrition Program for Women Infants and Children. These constitute federal financial assistance as defined under 2 CFR Part 200 and accordingly trigger civil rights compliance obligations under Section 503 and Section 504 of the Rehabilitation Act Title VI and Title VII of the Civil Rights Act the Americans with Disabilities Act and related nondiscrimination statutes. As recipients subrecipients or contractors operating in federally funded programs these entities were required to implement and enforce nondiscriminatory employment practices provide reasonable accommodations and protect against retaliation. Their failure to do so represents a violation of federal law and subjects them to oversight by the EEOC, the US Department of Health and Human Services Office for Civil Rights, the US Department of Labor Office of Federal Contract Compliance Programs and other relevant federal enforcement agencies.

These entities were not passive payroll processors but had direct control over human resources benefits medical leave accommodations and workplace policy enforcement. As such they exercised joint employer functions and retained operational control under federal law. Despite being federally funded they failed to provide disability accommodations retaliated after protected disclosures and failed to post or comply with EEOC required notices and procedures.

The existence of these federal awards imposes legal obligations that the Respondents disregarded. The EEOC and where appropriate the HHS Office for Civil Rights OFCCP and DOJ Civil Rights Division have concurrent jurisdiction over these federally assisted employment arrangements.

Taken together the discriminatory assignments performance sabotage retaliatory exclusion and leadership's failure to intervene created a severe and pervasive hostile work environment. This conduct violated Title VII of the Civil Rights Act the Americans with Disabilities Act and the Age Discrimination in Employment Act and it materially altered the conditions of my employment.

**IV. Retaliation for Protected Activity and Interference with ADA and FMLA Rights**

Following my formal internal complaints (Case Numbers 91030 and 97802), I reported a sustained pattern of workplace harassment, discrimination, retaliation, and disparate treatment in violation of federal civil rights laws. These complaints documented adverse actions and exclusionary conduct based on my race (Asian and Hispanic), color, national origin, age (over 40), and disability, as well as retaliation for protected activities including requests for ADA accommodation, anticipated FMLA leave, and disclosures of potential compliance and ethical violations. I identified repeated instances of inequitable requisition assignment, surveillance of my external professional activity, obstruction of access to tools provided to similarly situated white colleagues, and exclusion from team communications. These reports placed the employer on formal notice of its legal obligations. Instead of corrective action, retaliation intensified and culminated in my unlawful termination.

On May 10, 2025, I submitted a formal FMLA request through Lincoln Financial Group. On May 12, 2025, I informed leadership and HR of my intent to take protected leave. That same day, I issued a cease-and-desist notice to Mike McQuade, Kari Atkinson, Samantha Strawsburg, and Julie Hoffman citing harassment, retaliation, and ADA/FMLA interference. Despite clear conflicts of interest, HR Advisor Arijeta Bajrami—reporting to one of the named parties, initiated an unspecified investigation against me and refused to recuse conflicted personnel, violating procedural fairness and neutrality.

On May 15, 2025, prior to FMLA leave taking effect, I was contacted by Kirsten Schmierer, a subject of prior complaints, regarding leave delegation. She had also interfered with the ADA process by imposing new, unnecessary medical certification demands for previously approved accommodation. Her interference was based on misrepresentations that Lincoln Financial could not transmit documentation, which I later confirmed to be false. These actions served to block both ADA and FMLA rights through deliberate obstruction.

Later that same day, I was abruptly placed on paid administrative leave without prior notice or explanation. I had contacted tech support for laptop issues, but my access was disabled shortly thereafter, followed by a call from Ms. Bajrami, who informed me I was under investigation for alleged security clearance misuse and conflict of interest—both false claims. I have never held a DoD clearance, and my dormant LLC had been disclosed prior to hiring. I immediately provided written documentation disproving the allegations.

On May 24, 2025, ManpowerGroup was formally notified of my active participation in the Department of Defense Office of Inspector General Whistleblower Reprisal Investigation and Alternative Dispute Resolution (WRI ADR) Program. This program provides statutory protection to DoD contractors and employees under 10 U.S.C. § 1034 and related federal whistleblower laws. Despite being officially named in the mediation process, the employer declined to participate and failed to respond to the ADR coordinator, thereby refusing to engage in good-faith resolution. This nonresponse constitutes a form of retaliation and procedural bad faith, particularly given the Respondents' status as federal contractors and publicly traded entities bound by SEC, DoD, and EEOC compliance obligations.

On May 27, 2025, I was terminated while on administrative leave and without the opportunity to invoke my approved FMLA leave. My time records were falsified, and none of the stated reasons for termination, whether gross misconduct, performance, or conflict of interest, were substantiated by evidence or supported by prior disciplinary action. Inconsistent justifications further demonstrate pretext.

The individual who influenced the termination decision, Steve Kletzok, was a named party in one of my active ethics complaints. Despite my formal recusal request, he remained involved, undermining the legitimacy of the process and reinforcing the retaliatory nature of the outcome.

Further evidencing disparate treatment, the company continues to employ Irina Alexandru, a white employee who operates a competing recruitment business in violation of company policy. In contrast, I was terminated over a non-operational, dormant LLC that had no overlap with my work duties and was disclosed in advance.

The employer's enforcement of conflict-of-interest policies in my case but not in that of Irina Alexandru exemplifies selective enforcement in furtherance of unlawful retaliation. Despite her ongoing operation of an external recruiting business that competes directly with ManpowerGroup's core services, Ms. Alexandru remains employed and has not been subject to investigation, discipline, or adverse action. In contrast, I was terminated over a dormant limited liability company that had been fully disclosed prior to hire and had no operational or contractual overlap with my job duties, per Steve Kletzok.

This disparity illustrates a clear inconsistency in how alleged conflicts of interest are addressed and undermines the legitimacy of the employer's stated justification. Under federal anti-retaliation precedent, including decisions interpreting Title VII and the Americans with Disabilities Act, selective or inconsistent enforcement of workplace rules, particularly when exercised in close proximity to protected activity, constitutes strong evidence of pretext and retaliatory motive. The unequal treatment in this context cannot be justified by neutral business rationale and supports a finding that the stated reasons for termination were neither credible nor lawful.

These actions represent not only violations of Title VII, the ADA, the ADEA, and the FMLA, but also constitute unlawful retaliation under the False Claims Act (31 U.S.C. § 3730(h)), the Dodd-Frank Act (15 U.S.C. § 78u-6(h)), and DoD whistleblower protection statutes. The refusal to engage in the DoD OIG ADR process further underscores a pattern of noncompliance and bad-faith retaliation by a publicly traded federal contractor obligated to maintain anti-retaliation protocols and affirmative civil rights compliance.

The employer's use of conflicting and unsupported termination justifications including "gross misconduct," "performance," and "conflict of interest" reflects a pattern of shifting explanations that lack evidentiary support and procedural consistency. These inconsistencies are not merely administrative errors but constitute compelling evidence of pretext under established legal standards. In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the United States Supreme Court held that once an employee establishes a prima facie case of discrimination or retaliation, an employer's failure to provide a consistent legitimate and substantiated non-discriminatory reason for adverse action supports an inference of unlawful motive. Here, the absence of documentation disciplinary history or contemporaneous records to support the employer's stated reasons combined with their deviation from internal policies further corroborates retaliatory intent and unlawful motive. This reinforces that my termination was not the result of performance or misconduct but rather a direct consequence of engaging in legally protected activity.

**V. Adverse Actions, Retaliatory Pretext, and Procedural Violations**

In addition to my unlawful termination, I was subjected to a continuous and escalating pattern of materially adverse employment actions that altered the terms, conditions, and privileges of my employment. These actions were not incidental but reflected a coordinated and sustained course of retaliation, exclusion, procedural misconduct, and disparate treatment following my engagement in legally protected activities.

Among the adverse actions taken against me were the falsification of time records during the period in which my FMLA request was pending and subsequently approved. My timesheet was altered without my knowledge or consent. Protected leave time was omitted or misrepresented, constituting direct interference in violation of the Family and Medical Leave Act, codified at 29 USC Section 2615.

I was also systematically denied access to high-value requisitions and strategic assignments, despite consistently meeting performance expectations and actively pursuing professional development. My 2024 mid-year and year-end performance reviews confirmed that I demonstrated competency and growth. In contrast, similarly, situated Caucasian colleagues including Rachel Padilla, Lerin Merry, and Karen Knight were assigned more favorable requisitions that enhanced their performance metrics and organizational visibility.

The employer's enforcement of conflict-of-interest policies in my case but not in that of Irina Alexandru exemplifies selective enforcement in furtherance of unlawful retaliation. Despite her ongoing operation of an external recruiting business that competes directly with ManpowerGroup's core services, Ms. Alexandru remains employed and has not been subject to investigation, discipline, or adverse action. In contrast, I was terminated over a dormant limited liability company that had been fully disclosed prior to hire and had no operational or contractual overlap with my job duties, per Steve Kletzok.

This disparity illustrates a clear inconsistency in how alleged conflicts of interest are addressed and undermines the legitimacy of the employer's stated justification. Under federal anti-retaliation precedent, including decisions interpreting Title VII and the Americans with Disabilities Act, selective or inconsistent enforcement of workplace rules, particularly when exercised in close proximity to protected activity, constitutes strong evidence of pretext and retaliatory motive. The unequal treatment in this context cannot be justified by neutral business rationale and supports a finding that the stated reasons for termination were neither credible nor lawful.

Following my protected disclosures, I was excluded from team communications, leadership meetings, and developmental opportunities. These exclusions occurred despite my high level of engagement and completion of dozens of internal training courses and certifications. Leadership failed to justify or remediate these retaliatory acts.

In addition, individuals named in my prior ethics complaints including Steve Kletzok, Erika Nobel McHallam, and Kirsten Schmierer were permitted to influence employment and disciplinary decisions involving me. My formal requests for their recusal were ignored, violating fundamental principles of procedural fairness and reinforcing the retaliatory intent behind adverse actions taken.

The Georgia Department of Labor issued an Unemployment Insurance eligibility determination on June 25, 2025, finding no misconduct on my part and explicitly stating that the employer's justifications for termination were shifting, undocumented, and unsubstantiated. This objective finding by a government agency directly undermines the employer's asserted rationale and supports a conclusion of unlawful retaliation and pretext.

Additional corroboration is found in the employer's refusal to participate in the Alternative Dispute Resolution process initiated by the Department of Defense Office of Inspector General following my protected whistleblower submission. The employer failed to respond to official correspondence from the DoD OIG Whistleblower Reprisal Investigation and Alternative Dispute Resolution Program, thereby forfeiting an opportunity to resolve the dispute through early intervention. This refusal triggered a formal referral for federal investigation and confirms that my termination met the statutory threshold for whistleblower reprisal under both the False Claims Act and the Dodd Frank Act.

Taken together, the actions both before and after my termination demonstrate a clear and sustained pattern of unlawful retaliation, discriminatory treatment, and systemic violations of procedural and statutory protections. These actions violated Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Age Discrimination in Employment Act, and whistleblower protection statutes. The employer's conduct reflects an institutional failure to uphold civil rights and labor compliance obligations and constitutes bad faith in both execution and response to federal oversight.

In addition to the claims asserted herein, I currently have pending matters before other federal enforcement agencies arising from the same or related facts. These include: (1) a Whistleblower Reprisal Investigation pending with the U.S. Department of Defense Office of Inspector General (DoD OIG) under 10 U.S.C. § 1034; (2) a formal complaint before the U.S. Department of Labor Wage and Hour Division (DOL WHD) regarding violations of the Family and Medical Leave Act (FMLA); and (3) an affirmative action and discrimination complaint submitted to the U.S. Department of Labor Office of Federal Contract Compliance Programs (OFCCP) under Section 503 of the Rehabilitation Act of 1973. These concurrent matters involve materially overlapping factual allegations, including disability-based discrimination, leave interference, whistleblower retaliation, and noncompliance by federal contractors with applicable civil rights and labor obligations. I respectfully request that the EEOC coordinate its review with these agencies as appropriate, in accordance with established interagency protocols and jurisdiction-sharing procedures.

**VI. Requested Remedies and Relief under Federal Civil Rights Laws**

Based on the totality of facts, corroborating evidence, third party findings, and the employer's unlawful conduct described throughout this charge, I respectfully request that the U.S. Equal Employment Opportunity Commission conduct a comprehensive investigation and secure full remedies under applicable federal law. The pattern of discrimination, retaliation, procedural violations, and wrongful termination caused substantial and irreversible harm to my employment record, professional reputation, personal health, and family stability. These harms require not only acknowledgment but complete and enforceable redress in accordance with the whole relief principle outlined in EEOC Compliance Manual Section 12.

I do not seek reinstatement. Returning to a work environment marked by repeated retaliation, exclusion, and obstruction of rights would be incompatible with the dignity and legal protections afforded by Title VII and related statutes. Instead, I seek whole relief as permitted by federal law and agency authority to place me, as nearly as possible, in the position I would have occupied absent unlawful conduct.

I request back pay to restore lost wages, commissions, bonuses, accrued leave, retirement contributions, and health benefits from the date of unlawful termination through the end of the recovery period.

I request front pay in lieu of reinstatement based on foreseeable future income loss, reputational damage, constructive displacement, and loss of comparable career opportunities.

I seek compensatory damages for medically documented emotional distress including severe anxiety, major depressive symptoms, sleep disruption, and other stress related conditions caused by the employer's conduct.

I seek compensation for reputational harm and damage to my long-term career trajectory including the inability to secure accurate references or equal consideration in future employment due to retaliatory termination.

I seek compensatory relief for derivative hardship to my dependent daughter who lives with Type 1 diabetes and whose access to ongoing care, treatment continuity, and insurance coverage was severely compromised by my termination.

I request reimbursement for all medical and therapeutic costs incurred because of the employer's actions including care provided to my dependent for conditions exacerbated by the loss of income and benefits.

I request restoration or reimbursement of employer sponsored health insurance premiums and COBRA expenses incurred following termination particularly for critical care continuity and prescriptions related to diabetes.

I request punitive damages under Title VII the Americans with Disabilities Act and Section 1981 of the Civil Rights Act of 1866 due to the employer's willful and malicious disregard for my federally protected rights and deliberate retaliation following protected activity.

I request liquidated damages under the Family and Medical Leave Act and the Age Discrimination in Employment Act for knowing and bad faith violations of federal leave protections and age-based protections.

I request attorneys' fees expert witness costs and all litigation related expenses reasonably incurred in asserting and defending my civil rights throughout these proceedings.

I further request equitable and institutional relief. This includes removal of false or retaliatory entries from my personnel file, official correction of the reason for separation, reinstatement of accurate rehire eligibility status, and provision of a corrected and neutral employment reference affirming that I was not terminated for cause.

The employer should be required to adopt nonretaliation protocols, neutral internal complaint procedures, and conflict free decision making in future investigations and ADA or FMLA processes. Targeted training must be implemented for HR and leadership personnel to ensure compliance with civil rights obligations, retaliation prevention standards, and whistleblower protections.

I request mandatory posting of EEOC and federal rights notices in physical and virtual workspaces and public disclosure of EEOC findings, corrective actions, or consent decrees as appropriate. In cases involving federal grants or contracts, ongoing compliance monitoring should be imposed.

I further request a referral to appropriate enforcement bodies. These include the U.S. Department of Labor for FMLA violations, the U.S. Department of Justice and the Department of Health and Human Services Office for Civil Rights for potential Rehabilitation Act and Title VI violations, the Office of Federal Contract Compliance Programs for noncompliance with Section 503 affirmative action obligations, and the Department of Defense Office of Inspector General and related federal entities for whistleblower reprisal.

Finally, I reserve the right to pursue claims of fraudulent inducement and material misrepresentation under applicable state and

federal law. These arise from the employer's knowingly false representations about the nature of the position, compensation structure, and workplace safeguards for ADA and FMLA accommodations. Specifically, I was induced to accept and remain in the position under misrepresented terms including falsified commission structures, concealed reliance on vendor management systems that restricted earnings, and deceptive claims regarding internal complaint procedures and retaliation protections.

These representations were made in bad faith and materially contributed to the damages I have suffered including career disruption, loss of healthcare for my dependent, and psychological harm. The employer's subsequent procedural misconduct and refusal to engage in alternative dispute resolution despite being notified of my protected status as a whistleblower participating in the Department of Defense Office of Inspector General's Whistleblower Reprisal Program further demonstrates bad faith, continued retaliation, and organizational indifference to federal accountability.

The EEOC and relevant federal authorities are respectfully requested to act in accordance with applicable law and policy to ensure full legal, equitable, and institutional remedy.

**VII. Statutory Clarifications and Expansion of Charge Basis**

Pursuant to 29 CFR section 1601.12(b) and applicable EEOC procedures I respectfully submit this supplement to clarify and expand the statutory bases and requested remedies in connection with the facts already set forth in this charge. These additions are submitted to ensure comprehensive coverage of all relevant federal statutes enforceable by the EEOC and to preserve claims arising from related misconduct.

Genetic Information Nondiscrimination Act of 2008 (GINA) Title II: During the hiring process I disclosed that my dependent daughter has Type 1 diabetes in a genetic condition. Continued access to employer sponsored health benefits and FMLA related protection was a material factor in my decision to accept employment. I received express assurances that my family's medical needs would be supported through accommodation protected leave and stable compensation. However, following disclosures related to my daughter's medical condition and my engagement in protected caregiving activities the employer obstructed my FMLA access retaliated against my use of leave and ultimately terminated me while I was engaged in protected caregiving responsibilities. These actions constitute violations of GINA's Title II provisions which prohibit the use of genetic information including family medical history in employment decisions leave interference or adverse action.

Equal Pay Act of 1963 (EPA): Upon hire, I was placed in a role structurally equivalent to that of similarly situated Caucasian female recruiters. Despite comparable qualifications and job title, I was consistently assigned materially lower-value requisitions and denied equitable access to revenue-generating opportunities that were routinely allocated to my peers. These discriminatory assignment patterns directly suppressed my commission-based earnings, which comprised a significant portion of the compensation structure. The employer's rationale for this disparity was never grounded in performance, as no documented performance issues were cited during my employment, and this claim was further discredited by the Georgia Department of Labor's approval of my unemployment benefits. The employer did not contest that finding. These facts support a clear violation of the Equal Pay Act, which prohibits pay disparities on the basis of sex where the work performed is substantially equal in skill, effort, and responsibility and is carried out under similar working conditions.

Lilly Ledbetter Fair Pay Act of 2009: Although my base salary remained unchanged, I was systematically denied equitable access to commission generating requisitions which materially suppressed my total earning potential. These discriminatory assignment practices occurred repeatedly and had a cumulative financial impact over time. Each paycheck reflected the effects of these continuing discriminatory decisions. Under the Lilly Ledbetter Fair Pay Act of 2009 each compensation event affected by a prior discriminatory action whether by omission or commission constitutes a new violation and resets the statute of limitations for pay-related claims under Title VII the ADA and the ADEA.

Reservation of Right to Amend or Supplement: I formally reserve the right to amend, expand or supplement this charge as new information becomes available during the EEOC's investigation or related proceedings. This includes but is not limited to claims under the Pregnant Workers Fairness Act. Additional whistleblower statutes fraudulent inducement and procedural or privacy violations under federal or state law. This reservation ensures preservation of all rights necessary for full legal and equitable redress.

Expanded Remedies Sought: In addition to the relief requested in Sections VI and prior portions of this charge I respectfully seek the following specific remedies for the statutory violations described herein. I request declaratory relief establishing that the employer's actions violated the Genetic Information Nondiscrimination Act, the Equal Pay Act and the Lilly Ledbetter Fair Pay Act. I request equitable relief in the form of mandated audits to assess requisition distribution pay equity and compliance with confidentiality requirements related to genetic information and dependent medical disclosures. I request institutional reforms including updated policies compliance training and structured oversight to ensure future adherence to GINA and EPA standards within similarly structured employment programs.

These supplemental allegations and requests are submitted in good faith and under penalty of perjury as part of EEOC Charge No. 410 2025 04719. I respectfully request that the EEOC incorporate these statutory bases and remedial measures into the formal scope of its investigation and any resulting enforcement actions.

**VIII. Procedural Rights, Federal Agency Accountability, and Reserved Claims**

In addition to the substantive civil rights violations committed by my employer, I assert and preserve all applicable procedural rights under federal law related to the conduct of federal agencies involved in the processing, investigation, or adjudication of this charge. This includes the Equal Employment Opportunity Commission (EEOC), the U.S. Department of Labor (DOL), and the U.S. Department of Defense Office of Inspector General (DoD OIG). These procedural rights are independently guaranteed under federal administrative and constitutional law and are asserted as follows.

I invoke the protections of the Administrative Procedure Act of 1946 codified at 5 U.S.C. §§ 551 through 559 which entitles me to due process in all federal administrative proceedings. These rights include but are not limited to timely and adequate notice, the right to impartial adjudication, and protection from arbitrary capricious or prejudicial agency conduct. I reserve the right to contest any administrative action that deviates from procedural norms or results in delay, conflict of interest, or bias affecting the fair resolution of this charge.

Pursuant to the Freedom of Information Act codified at 5 U.S.C. § 552 I intend to submit formal FOIA requests for all agency records and communications concerning the processing, internal deliberation, and disposition of this charge. This includes documentation of EEOC staff actions correspondence between agencies and application of internal procedures or exceptions. FOIA provides a statutory mechanism to ensure transparency in administrative oversight and protects my right to obtain non-exempt records for legal review.

Under the Privacy Act of 1974 codified at 5 U.S.C. § 552a I assert my right to control access to and dissemination of personal and medical information obtained or maintained by the EEOC and affiliated federal contractors. This is especially applicable to ADA-related health documentation FMLA leave records and any personnel files that may have been shared without appropriate authorization or redaction. Any unlawful disclosure or failure to safeguard this data will be addressed through appropriate legal remedies including Privacy Act enforcement provisions.

To the extent that any federal agency imposes duplicative excessive or unjustified documentation requirements in connection with the handling of this charge I assert protections under the Paperwork Reduction Act of 1995. The PRA prohibits agencies from imposing unreasonable burdens on private citizens without proper clearance and procedural justification and I reserve all rights to challenge PRA violations in the administrative record.

The employer's refusal to engage in the mediation process initiated by the Department of Defense Office of Inspector General following receipt of my whistleblower disclosures represents a violation of the principles set forth in the Administrative Dispute Resolution Act codified at 5 U.S.C. § 571. Their failure to participate in this federally authorized resolution process constitutes both bad faith and obstruction and contributes to an actionable record of retaliation by a federal contractor and publicly traded entity.

Additionally, I have filed a formal complaint with the EEOC Office of Inspector General regarding potential misconduct ethical violations and procedural irregularities committed by federal employees during the intake and investigatory phases of this charge. These issues include failures to enforce mandatory recusals disregard of established procedures and failure to maintain investigatory neutrality. These acts are governed by the Federal Employee Conduct Standards codified at 5 U.S.C. § 7301 which mandates that federal officials exercise impartiality integrity and fidelity to law in all official duties.

These procedural assertions are not merely ancillary but form an essential component of my claim for full and fair adjudication. They ensure that the investigation and resolution of my charge conform to constitutional principles due process guarantees and federal agency obligations. I formally reserve the right to pursue judicial or administrative review should any agency involved in this matter deviate from its statutory or regulatory obligations.

This document is submitted as part of EEOC Charge No. 410-2025-04719 and should be incorporated in full into the investigatory and adjudicative record.

**IX. Procedural Clarification: Intake Irregularities and Good Faith Correction**

This statement is submitted in connection with EEOC Charge No. 410 2025 04719 to ensure that the investigatory record accurately reflects the procedural course and legal scope of the matter. In good faith and pursuant to my rights under 29 CFR § 1601.12(b), I offer the following clarification:

Following submission of my formal intake materials, I experienced significant irregularities in the handling and transmission of the initial Charge of Discrimination. Despite the timely submission of supporting documentation and statutory claims, the version I received shortly thereafter was materially incomplete and did not reflect key allegations already documented. Entire categories of protected activity and statutory bases including whistleblower protections, procedural violations, and retaliation under federal contract compliance standards were excluded or misstated.

These omissions, if uncorrected, could improperly constrain the scope of investigation and limit the EEOC's ability to evaluate violations under applicable law. To prevent such prejudice and in accordance with established Commission procedures, I have prepared and submitted this supplemented charge to ensure the agency has a full and accurate record for review.

This supplementation is made in good faith, not adversarial, and with the intention of restoring procedural clarity, reinforcing investigatory integrity, and ensuring alignment with governing statutes and EEOC jurisdiction. I respectfully request that this complete submission be incorporated into the investigatory and adjudicative record in its entirety.

I affirm my continued willingness to cooperate with the Commission and related agencies and respectfully request that no adverse inference be drawn from the need to correct prior omissions made at the intake or processing stage.

I respectfully request that these charges proceed through the full administrative process, including investigation, voluntary mediation, and conciliation, as provided under EEOC procedures and 29 C.F.R. Part 1601. I do not seek an early dismissal or Notice of Right to Sue at this stage. My intent is to exhaust all administrative remedies in good faith and in accordance with federal law. Premature closure would not only contradict this stated intent but may also frustrate investigatory obligations under Title VII, the ADA, and other cited statutes, particularly in light of confirmed employer non-responsiveness to related federal ADR and whistleblower investigations. I reserve all rights under law and respectfully request that the EEOC confirm progression to the investigative phase.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary____________________________________

Printed Name ____________________________________

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (09/24).
2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.
3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.
4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.

A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **Whether Disclosure is Mandatory; Effect of Not Giving Information.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## Notice of Right to Request Substantial Weight Review

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## Notice of Non-Retaliation Requirements

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.